# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Gregory Bronson, being duly sworn, state as follows:

1. I am a Border Patrol Agent with the United States Department of Homeland Security, United States Border Patrol. I have been with the Border Patrol for 1 year and 8 months and was employed as a Customs and Border Protection Officer (CBPO) for over 8 years. I have also lived in the Newport area for over 30 years giving me a great understanding of the area, its residents, and any uncommon activity that occurs. I am currently assigned to the Newport Border Patrol Station in Derby, Vermont.

2. This affidavit is offered to demonstrate that probable cause exists to believe that Adrian Chavez Guevara (CHAVEZ GUEVARA ), an alien from Mexico, Miguel Angel Cruz Martinez (CRUZ MARTINEZ), an alien from Mexico, Carlos Armando Rios Urquijo (RIOS URQUIJO), an alien from Mexico, and Ting Yang (YANG), an alien from China, entered the United States at a place other than as designated by immigration officers, in violation of 8 U.S.C. § 1325(a)(1), and that Edwin Enrique Menjivar (MENJIVAR), knowing or in reckless disregard of the fact that an alien had come to, entered, or remained in the United States in violation of law, transported or moved, or attempted to transport or move, such aliens within the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).

3. The information contained in this affidavit is based on my training and experience, as well as my own investigation and information I received from other agents. This affidavit is intended to show that there is probable cause to believe that CHAVEZ GUEVARA, CRUZ MARTINEZ, RIOS URQUIJO, YANG, and MENJIVAR committed the foregoing offenses and does not set forth all facts I know from my investigation into this matter. Any statements included herein are provided only in sum and substance and in part.

4. On August 24, 2026, Border Patrol Agent (BPA) Jared Dunham-Westlund and BPA Colin Kristolaitis were conducting roving patrol in a marked Border Patrol Unit on Holland Pond Road in Holland, Vermont. At approximately 6:15 a.m. BPA Dunham-Westlund and BPA Kristolaitis observed a silver Hyundai Santa Fe with New Jersey registration (Z98HMG) traveling north on Holland Pond Road past their position. Holland Pond Road is a small rural dirt road with very little non-local or through traffic. Agents observed what appeared to be two males in the front seating area of the vehicle, with the passenger being described as heavy-set.

5. BPA Dunham-Westlund and BPA Kristolaitis are aware of the ongoing human smuggling activity within the Newport Station AOR and specifically the Holland area. On August 13th, 2026, Newport Border Patrol Agents apprehended a human smuggling event consisting of four illegal aliens and their pickup driver on Valley Road in Holland. Additionally on August 22nd Newport Border Patrol Agents received intelligence suggesting that at least four individuals had illegally entered the United States in the same area. Border Patrol Agents were able to confirm the August 22 report by shoe sign (tracks) at a location known to be used as a load-up spot by human smugglers on Holland Pond Road, as well as on the international border.

6. BPA Dunham-Westlund and BPA Kristolaitis are also aware that vehicles bearing out-of-state registration are commonly used by alien smuggling organizations when transporting individuals who have just illegally entered the United States.

7. BPA Dunham-Westlund and BPA Kristolaitis turned their vehicle around and began to follow the silver Hyundai Santa Fe north on Holland Pond Road. The vehicle traveled to the intersection of Holland Pond Road and Prairie Road and then turned eastbound towards the known human smuggling load-up location. BPAs are aware that this road dead-ends so they decided to position their vehicle at the Prairie Road / Holland Pond Road intersection to see if

the vehicle would return. This intersection is located approximately 500 yards south of the international border with Canada. After the intersection, Holland Pond Road continues southeast for 2 miles until its end at Holland Pond. The suspected load-up location on Holland Pond Road is located approximately 300 yards east of the Holland Pond/Prairie Road intersection.

8. Approximately 10 minutes later the silver Hyundai Santa Fe returned and continued onto Prairie Road past the Agents position. Upon the vehicle's return, the front passenger who was described as heavy-set was no longer visible to BPAs.

9. BPA Dunham-Westlund and BPA Kristolaitis are aware of trends associated with human smuggling events in the Newport AOR. Intelligence from prior Newport events indicates that vehicles sometimes drop off individuals to illegally enter Canada while simultaneously picking up individuals who had just entered the United States illegally. The front passenger no longer being visible to BPAs emphasized this possibility.

10. BPA Dunham-Westlund and BPA Kristolaitis followed the Hyundai Santa Fe onto Prairie Road to further investigate. While following the vehicle, BPA Dunham-Westlund observed occupants in the rear seats of the vehicle that were attempting to conceal themselves by lowering their position in the seats. At this time a registration check was requested on the New Jersey registration (Z98HMG) through Swanton Sector Radio communications. Swanton Sector Radio Communications indicated that the vehicle was previously encountered by Newport Border Patrol Agents months prior and was suspected to be involved with human smuggling.

11. As the vehicle continued, it eventually turned east onto Valley Road. At this point BPA Dunham-Westlund and BPA Kristolaitis believed that the vehicle was involved with human smuggling and activated their vehicle's emergency equipment to initiate a traffic stop. The vehicle yielded immediately.

12. BPA Dunham-Westlund and BPA Kristolaitis who were in full Border Patrol Uniform, approached the vehicle and identified themselves as U.S Border Patrol Agents. BPA's initially observed MENJIVAR in the driver seat. MENJIVAR was smoking a cigarette and was visibly shaking. When BPA Dunham-Westlund asked MENJIVAR why he was shaking, his response was "you know why I'm shaking." BPAs additionally observed YANG crouched down with her body positioned toward the floor area of the front passenger seat in an apparent attempt to conceal herself. Additionally, three subjects were observed in the second-row seating of the vehicle attempting to conceal themselves under blankets. Further observation led agents to discover two additional subjects fully concealed by a blanket in the third-row seating.

13. BPA Dunham-Westlund and BPA Kristolaitis conducted an immigration inspection on the occupants within the car. MENJIVAR was identified as being a naturalized United States citizen. YANG could not communicate in English or Spanish and so was detained pending further immigration checks. CHAVEZ GUEVARA, CRUZ MARTINEZ, and RIOS URQUIJO all stated to BPA's that they were citizens of Mexico and that they did not possess lawful documentation authorizing them to enter, pass through, or remain in the United States. The two remaining passengers were identified as Celsa Victoria Morla Pin (MORLA PIN) and her daughter Paulina Victoria Goya Morla (GOYA MORLA). Both claimed to be citizens of Ecuador and could not provide lawful documentation authorizing them to enter, pass through, or remain in the United States.

14. As the occupants were instructed to get out of the vehicle, BPAs observed that the pants and footwear of the six passengers were visibly wet and mud covered. All occupants were detained and transported to the Newport Border Patrol station for processing and further investigation.

15. An inventory search of the vehicle was conducted by BPA Dunham-Westlund. During the search a handheld radio-type device was located and was in a powered-on state. BPA Dunham-Westlund believed that this device may have been used to coordinate the meet up and transportation during the smuggling event.

16. At the Newport Border Patrol station, all subjects' fingerprints were scanned electronically and submitted to the Integrated Automated Fingerprint Identification System (IAFIS) and Automated Biometric Identification System (IDENT) databases. These are biometric databases that contain criminal and immigration records. CHAVEZ GUEVARA, CRUZ MARTINEZ, and RIOS URQUIJO were confirmed to be citizens of Mexico with no documentation authorizing them to enter, pass through, or remain in the United States. CHAVEZ GUEVARA was found to have an expired H2B non-immigrant visa that expired in 2019 and his last legal admission expired on December 10, 2019. CRUZ MARTINEZ was in possession of a valid Mexican passport but had no U.S immigration documents or crossings at a Port of Entry. YANG was found to have a Chinese passport and utilizing a translation service was confirmed to be a citizen of China without documentation authorizing her to enter, pass through, or remain in the United States. MORLA PIN and GOYA MORLA were confirmed to be citizens of Ecuador and had prior encounters with CBP and immigration court dates pending. MORLA PIN and GOYA MORLA were released from custody pending their immigration hearings that were already scheduled.

17. Border Patrol Agents attempted to conduct interviews with all the subjects involved. RIOS URQUIJO was read his *Miranda* rights and agreed to speak with Border Patrol Agents without his attorney present. The entirety of the interview was recorded. RIOS URQUIJO stated to BPA's during the interview that all the individuals that were in the vehicle at

the time of the traffic stop besides the driver, had crossed the border from Canada to the United States. RIOS URQUIJO explained that they were all dropped off by a white BMW on the Canadian side of the border and followed a man who was wearing a facemask who guided them across the border. The walk across the border was described as approximately 30 minutes. When BPAs asked why he did not come through a Port of Entry, RIOS URQUIJO stated that he didn't think he would be allowed entry. RIOS URQUIJO further explained that once in the U.S, the man who guided them told them what car they would get into. RIOS URQUIJO also explained that when they got into the car in the United States, the driver (MENJIVAR) instructed all the occupants to hide under the blankets that were already in the car.

18. MORLA PIN was read her *Miranda* rights and agreed to speak with Border Patrol Agents without her attorney present. The entirety of the interview was recorded. MORLA PIN also stated that all occupants in the car besides the driver had crossed together from Canada to the United States through the woods. MORLA PIN also stated that MENJIVAR instructed them to hide themselves under the blankets in his car. All the remaining subjects invoked their right to counsel.

19. Based on the foregoing, I believe there is probable cause to believe that Adrian Chavez Guevara (CHAVEZ GUEVARA), an alien from Mexico, Miguel Angel Cruz Martinez (CRUZ MARTINEZ), an alien from Mexico, Carlos Armando Rios Urquijo (RIOS URQUIJO), an alien from Mexico, and Ting Yang (YANG), an alien from China entered the United States at a place other than as designated by immigration officers, in violation of 8 U.S.C. § 1325(a)(1), and that Edwin Enrique Menjivar (MENJIVAR), knowing or in reckless disregard of the fact that an alien had come to, entered, or remained in the United States in violation of law, transported or moved, or attempted to transport or move, such alien within the United States, in violation of 8

U.S.C. § 1324(a)(1)(A)(ii).

Dated at Burlington, in the District of Vermont on this 25th day of August 2026.

GREGORY BRONSON
U.S. Border Patrol Agent

Subscribed and sworn before me this 25th day of August 2026.

HONORABLE KEVIN J. DOYLE
U.S. Magistrate Judge